JOHN HENDERSON

v.

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Mt. Vernon June 12, 1886.*

1.   CRIMINAL LAW—*indictment for perjury—of the conclusion.*  Under our statute it is not essential an indictment for perjury shall conclude with the words, "and so the jurors aforesaid, upon their oaths aforesaid, do say, etc., that the defendant did commit willful and corrupt perjury."  The statute makes it sufficient to set forth the substance of the offence charged, together with proper averments to falsify the matter whereon the perjury is assigned.

2.   SAME—*perjury—materiality of testimony alleged to have been false.* On a charge of perjury, in that the accused gave false testimony that on a certain time and at a place named, a person offered to give him $250 if he would kill another person, the time, place and amount are material parts of his evidence, as they give strength to the statement of the offer to hire the witness.

3.   SAME—*perjury—allegations and proofs, in establishing the truth of the testimony questioned.*  Where a person is indicted for perjury, in having testified falsely that a deceased person, in his lifetime, at a certain time and place, offered him $250 if he would kill another person, it may be shown in defence that deceased did offer the accused money (any sum) to do the act at a different time and place from that named in the indictment, and it, if shown, will be a complete answer.  The defence, in proving the truth of the testimony, will not be confined to the time, place and amount named in the indictment.

WRIT OF ERROR to the Circuit Court of Jackson county; the Hon. OLIVER A. HARKER, Judge, presiding.

Mr. W. J. ALLEN, and Mr. W. W. BARR, for the plaintiff in error:

The assignment of perjury on which a conviction is asked, must be in a matter which was material to the issue.  If a witness be asked whether goods were paid for on a particular day, and he answer in the affirmative, if the goods were really paid for, though not on that day, it will not be perjury. 2 Wharton on Crim. Law, sec. 1276.

The indictment, to be good, should have negatived the alleged testimony by averring that Moore did not try to hire defendant to kill Lightfoot, at that or any other time, at Makanda or elsewhere. Archbold's Crim. Pl. 426.

In this indictment there is no proper charge of perjury. What is therein stated is merely introductory, and an assignment of perjury should follow, thus, "and so the jurors aforesaid, upon their oaths aforesaid, do say," etc., and then charge the defendant with perjury. Archbold's Crim. Pl. 426.

Mr. R. J. MCILVAINE, State's attorney, and Mr. W. A. SCHWARTZ, for the People:

Circumstantiality of evidence becomes material where it contributes to the witness' credibility. 2 Wharton on Crim. Law, secs. 1277, 1279, 1299; *Commonwealth* v. *Grant*, 116 Mass. 17.

It was more advantageous to plaintiff to have all the facts negatived than to have them met by a general averment that he swore falsely as to an attempt to hire him, and such general averment would have been sufficient. 2 Wharton on Crim. Law, sec. 1300.

The assignment of perjury consists in the allegations that the matter sworn to was false, and that defendant knew it was false, and not in the formal conclusion, which is immaterial. 2 Wharton on Precedents, form 577, note n.

When the jury has been properly instructed, and the testimony is contradictory, a new trial will not be awarded by this court. *Connell* v. *The People*, 81 Ill. 379; *Rafferty* v. *The People*, 72 id. 57; *Gainey* v. *The People*, 97 id. 275.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an indictment, in the circuit court of Jackson county, against John Henderson, for perjury. The indictment contains averments of the pendency of a certain cause of

*The People* v. *Henry Lightfoot,* for the murder of one Benjamin W. Moore, the jurisdiction of the court, etc. It was therein then alleged, that it became a material inquiry and issue in said trial whether the said Moore tried to hire the said John Henderson to kill the said Lightfoot, and the said John Henderson being so sworn as aforesaid, wickedly contriving and intending to cause the said Lightfoot to be acquitted of said felony, did then and there feloniously, willfully, corruptly and falsely, in said, etc., material to said issue and trial, depose and swear that the said Moore offered him, the said John Henderson, at the town of Makanda, in said county, on the 18th day of November, A. D. 1885, the sum of $250, if he, the said John Henderson, would kill the said Lightfoot, whereas, in truth and in fact, as the said John Henderson then and there well knew, the said Moore did not offer him, the said John Henderson, at the town of Makanda aforesaid, on said 18th day of November, the sum of $250 if the said John Henderson would kill the said Lightfoot. The indictment then concludes: "Contrary to the form of the statute in such case made and provided, and against the peace and dignity of the same People of the State of Illinois." The defendant entered a motion to quash the indictment, and, after conviction, a motion in arrest of judgment, both of which were overruled, and the decision of the court on the motions is the first error relied upon to reverse the judgment.

Two objections are made to the indictment. First, it is contended that the averment wherein it is alleged that the defendant testified that Moore tried to hire him to kill Lightfoot, on the 18th day of November, at Makanda, for $250, presented an immaterial issue. It is no doubt true that the *gist* of the offence consisted in giving evidence that Moore offered the defendant money to induce him to kill Lightfoot, but, at the same time, the place, amount and the time were also material matters. As said in the argument, the naming of the time, place and amount added strength to the testi-

mony of the defendant on the issue before the jury, and thus became a material part of his evidence. It is a mistake to suppose that by the averment in the indictment the defendant, in making his defence, was confined to the place, time and amount alleged. As said before, the material element of the crime charged against the defendant was, that he testified that Moore offered him money to kill a certain person. In his defence, it might have been proper for the defendant to prove that Moore offered him money to do the act at a different time and place from that named in the indictment. Such evidence would have been a complete answer to the charge in the indictment, and had it been offered, it no doubt would have been admitted.

The second objection is, that the indictment is bad for the reason that it fails to conclude as required by law. The form in the old precedents requires a formal conclusion, substantially as follows: "And so the jurors aforesaid, upon their oaths aforesaid, do say, etc., that the defendant did commit willful and corrupt perjury," etc. While it might be well, in an indictment of this character, to conform to the formal conclusion used in the precedents, it is not material. (2 Chitty on Criminal Law, 312; *The King* v. *Smith,* 2 Leach, 856.) Our statute does not name the formal conclusion as an essential element in an indictment for perjury. It declares: "In every indictment for perjury * * * it shall be sufficient to set forth the substance of the offence charged upon the defendant, * * * together with the proper averments to falsify the matter wherein the perjury is assigned." (Rev. Stat. chap. 38, sec. 227.) The indictment conformed substantially to the statute, and we regard it sufficient.

It is next contended that there was not sufficient evidence introduced to warrant the conviction. There is no dispute in regard to the fact that on the trial of Lightfoot for the murder of Moore, in the circuit court of Jackson county, the defendant testified, as charged in the indictment, that Moore

offered him $250 to kill Lightfoot; that the offer was made in a conversation between the defendant and Moore, while they were sitting on some apple barrels, at the south end of the passenger depot platform in Makanda, on Wednesday, the 18th day of November, 1885. It is also clear, from the evidence, that Moore was in Makanda on the 18th day of November, and that was the only time in the month that he was there. It is also clear, from the evidence, that Moore arrived at Makanda, on the train, about noon of that day, and returned on the north-bound train, between two and three o'clock. But whether the defendant was in Makanda, and saw Moore, on the 18th day of November, the evidence is somewhat conflicting. Several reliable witnesses, who were at the depot with Moore, testify that the defendant was not there, and no conversation occurred between Moore and the defendant. It appears from the evidence, that Moore went to Makanda to see a justice of the peace, in reference to some case on his docket; that upon arriving at the depot he went immediately to the office of the justice. He remained there, as the justice testified, an hour, or an hour and a half. Then the justice went with Moore to the depot; remained there a short time; ate some apples out of a barrel on the platform. Then the two walked across to Hartman's store, and remained there fifteen or twenty minutes, and then returned to the depot, where they remained together until Moore took the train for home. The justice testified that Henderson was not there, and no conversation occurred between him and the defendant at the apple barrels on the depot platform. The testimony of the justice is corroborated by other witnesses who were there at the time. It is true that the defendant introduced some witnesses who testified that he was there, and one testified that he saw Moore and the defendant in conversation together at the depot. This witness, who was a lawyer without a license, had assisted in the defence of Lightfoot, and was then under indictment for perjury. On

his cross-examination he testified that Henderson was on a drunk the day before. He testified that he took him home, and brought him back the next day to the trial. Whether the witness testified to the truth was a question for the jury. Doubtless his connection with Henderson, and his seeming control and management of him before Henderson testified in the Lightfoot case, did not inspire the jury with much confidence in the integrity of his evidence.

We do not, however, deem it necessary to enter upon a critical review of the evidence upon this question. We have carefully examined all the evidence, and, in our judgment, it was entirely sufficient to authorize the jury to arrive at the conclusion that the defendant had no conversation at Makanda with Moore, and that Moore made no such offer as he testified, on the trial of Lightfoot, was made to him. The story is incredible in itself. It is unreasonable to believe that any person of ordinary intelligence would, at a public depot, in the presence of a number of people, enter into negotiations with another to induce him to commit murder for a stipulated sum of money. Such contracts are not made at a public place, in broad daylight, in the presence of witnesses, but it is more reasonable to believe that an assassin who sought to engage one to aid him in the commission of such a crime, would seek a dark, secluded spot, where no living witness could see or hear the foul bargain.

We think the verdict of the jury warranted by the evidence, and the judgment will be affirmed.

*Judgment affirmed.*